**NO. 25-50864**

# In The United States Court of Appeals for the Fifth Circuit

PITTSBURGH LOGISTICS SYSTEMS, INC.,

*Plaintiff-Appellant / Cross-Appellee*

v.

GLEN ROSE TRANSPORTATION MANAGEMENT,

*Defendant-Appellee / Cross-Appellant*

On Appeal From the United States District Court for the Western District of Texas, Waco Division, Civil action No. 6:20-CV-01173

## CORRECTED BRIEF FOR APPELLANT

Bryant S. Banes
Texas State Bar No. 24035950
Email: bbanes@nhblaw.com

NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77056
Telephone: (713) 629-1800
Facsimile: (713) 629-1812

*Counsel for Plaintiff-Appellant*

**NO. 25-50864**

---

# In The United States Court of Appeals for the Fifth Circuit

---

PITTSBURGH LOGISTICS SYSTEMS, INC.,

*Plaintiff-Appellant / Cross-Appellee*

v.

GLEN ROSE TRANSPORTATION MANAGEMENT,

*Defendant-Appellee / Cross Appellant*

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Appellant**
Pittsburgh Logistics Systems, Inc.

**Appellee**
Glen Rose Transportation Management

**Counsel for Appellant**
Bryant S. Banes
Texas State Bar No. 24035950
Email: bbanes@nhblaw.com
NEEL, HOOPER & BANES, P.C.
1800 West Loop South
Suite 1750
Houston, Texas 77056
Telephone: (713) 629-1800
Facsimile: (713) 629-1812

**Counsel for Appellee**
Wes Dauphinot
Attorney-in-Charge
State Bar No. 00793584
Law Office of Wes Dauphinot, PC
900 West Abram
Arlington, TX 76013
Phone: 817-462-0676
Fax: 817-704-4788
Email: wes@dauphinotlawfirm.com

*/s/ Bryant S. Banes*
Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant moves, pursuant to F.R.A.P. Rule 34(a), to place this case on the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) as described in the accompanying memorandum, the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......... 2
STATEMENT REGARDING ORAL ARGUMENT .......... 4
TABLE OF CONTENTS .......... 5
TABLE OF AUTHORITIES .......... 6
JURISDICTIONAL STATEMENT .......... 10
STATEMENT OF ISSUES PRESENTED FOR REVIEW .......... 11
STATEMENT OF THE CASE .......... 12
SUMMARY OF THE ARGUMENT .......... 14
STATEMENT OF FACTS .......... 16
ARGUMENT .......... 23
I. Standard of Review .......... 23
II.The District Court committed reversible error by refusing to apply the law of the case doctrine, collateral estoppel, and res judicata, and allowing Appellee to introduce evidence and testimony contradicting the legal ruling that the customer list was a trade secret. .......... 24
III.The District Court erred by allowing evidence and testimony demonstrating that PLS failed to regain its restricted customers back, as this was irrelevant to any claim or damage. .......... 34
IV. The District Court committed reversible error by denying PLS's Rule 59(e) motion when PLS showed a manifest error of law.. .......... 349
CONCLUSION .......... 44
CERTIFICATE OF SERVICE .......... 45
CERTIFICATE OF COMPLIANCE .......... 46
CERTIFICATIONS UNDER ECF FILING STANDARDS .......... 47

# TABLE OF AUTHORITIES

**CASES:**

*Accresa Health LLC v. Hint Health Inc.*,
No. 4:18-CV-00536, 2020 WL 3637801, at *12
(E.D. Tex. July 6, 2020) ........ 41
*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*,
272 F.3d 276, 279 (5th Cir. 2001). ........ 25
*Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*,
111 F.4th 536, 546 (5th Cir. 2024) ........ 24
*Beltran v. Lockheed Martin Corp.*,
760 F. Supp. 3d 483, 487 (N.D. Tex. 2024) ........ 33
*Certain Underwriters at Lloyd's, London v. Axon Pressure Prod., Inc.*,
951 F.3d 248, 256 (5th Cir. 2020) ........ 24
*Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460, 467 (5th Cir. 2013) ........ 33
*Dallas Gas Partners, L.P. v. Prospect Energy Corp.*,
733 F.3d 148, 157 (5th Cir. 2013) ........ 27
*Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*,
448 F.3d 825, 829 (5th Cir. 2006) ........ 31
*El Paso Disposal, LP v. Ecube Labs Co.*,
766 F. Supp. 3d 692, 711 (W.D. Tex. 2025) ........ 36
*GE Betz, Inc. v. Moffitt-Johnston*,
885 F.3d 318, 325 (5th Cir. 2018) ........ 41
*Harrell v. Dixon Bay Transp. Co.*,
718 F.2d 123 (5th Cir. 1983). ........ 40
*His Co., Inc. v. Stover*,
202 F. Supp. 3d 685, 692 (S.D. Tex. 2016) ........ 41
*In re Felt*,
255 F.3d 220, 225 (5th Cir. 2001) ........ 25
*In re Volkswagen of Am., Inc.*,
545 F.3d 304, 309 (5th Cir. 2008) ........ 34

*Kellmann v. Workstation Intergrations, Inc.*,
332 S.W.3d 679 (Tex. App.—Houston [14th] 2010) ........................ 37
*Kelly v. Boeing Petroleum Servs., Inc.*,
61 F.3d 350, 361 (5th Cir. 1995) ........................................................ 29
*Kotteakos v. United States*,
328 U.S. 750, 760 (1946) .................................................................... 29
*Landmark Land Co. v. Office of Thrift Supervision*,
990 F.2d 807, 811 (5th Cir.1993) ....................................................... 34
*Matter of AKD Invs.*,
79 F.4th 487, 491 (5th Cir. 2023)........................................................ 25
*Med. Ctr. Pharmacy v. Holder*,
634 F.3d 830, 834 (5th Cir. 2011) ...................................................... 24
*Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*,
801 F.2d 748, 751 (5th Cir. 1986) ...................................................... 31
*Moss v. Ole S. Real Est., Inc.*,
933 F.2d 1300, 1308 (5th Cir. 1991) .................................................. 39
*Novick v. Shipcom Wireless, Inc.*,
946 F.3d 735, 740 (5th Cir. 2020) ...................................................... 35
*Pittsburgh Logistics Sys., Inc. v. Barricks*,
No. 4:20-CV-04282, 2022 WL 2353334, at *9
(S.D. Tex. June 30, 2022) .................................................................. 20
*Ratliff v. Aransas County*,
948 F.3d 281, 286 (5th Cir. 2020) ...................................................... 24
*Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563, 567 (5th Cir. 2003) ...................................................... 39
*Shinseki v. Sanders*,
556 U.S. 396, 407-08 (2009) ............................................................... 29
*Southwest Airlines, Inc. v. Texas Int'l Airlines, Inc.*,
546 F.2d 84, 95 (5th Cir. 1977) .......................................................... 32
*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
426 F. Supp. 3d 311, 350 (E.D. Tex. 2019) ......................................... 42
*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*,
531 S.W.3d 829, 844

(Tex. App.—Corpus Christi 2017, no pet.) .......................................40
*Trevino v. City of Fort Worth*,
944 F.3d 567, 570 (5th Cir. 2019) .......................................................24
*United States v. Bravo*,
852 Fed.Appx. 790, 794 (5th Cir. Apr. 20, 2021) ..............................27
*United States v. Caldwell*,
586 F.3d 338, 341 (5th Cir. 2009) .......................................................28
*United States v. McRae*,
593 F.2d 700, 707 (5th Cir.) ................................................................38
*United States v. Nelson*,
No. 22-30485, 2023 WL 3376556, at *1
(5th Cir. May 11, 2023) .......................................................................24
*United States v. Nesmith*,
866 F.3d 677, 679 (5th Cir. 2017) .......................................................27
*United States v. Pace*,
10 F.3d 1106, 1115-16 (5th Cir. 1993) ...............................................38
*Vasquez v. Bridgestone/Firestone, Inc.*,
325 F.3d 665, 677 (5th Cir. 2003) .......................................................31
*Vines v. Univ. of Louisiana at Monroe*,
398 F.3d 700, 705 (5th Cir. 2005) .......................................................31
*Viterbo v. Dow Chemical Co.*,
826 F.2d 420, 422 (5th Cir. 1987) .......................................................39
*Wellogix, Inc. v. Accenture, L.L.P.*,
716 F.3d 867, 874 (5th Cir. 2013) .......................................................41
*White v. Murtha*,
377 F.2d 428, 431 (5th Cir. 1967) .......................................................25
*WMM v. Trump*,
2025 WL 1176980, at *1
(N.D. Tex. Apr. 21 , 2025) ...................................................................43

**STATUTES:**

28 U.S.C. § 1332(a)(1).............................................................................10

28 U.S.C. §1291 .... 10
28 U.S.C. § 2111 .... 29
18 U.S.C. § 1836 *et seq.* .... 36
18 U.S.C. § 1836(b)(3)(B)(i)(II) .... 42
Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 .... 36, 40

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 59(e) .... *passim*
Fed. R. Evid. 401 .... 34
Fed. R. Evid. 402 .... 35
Fed. R. Evid. 403 .... 37

## JURISDICTIONAL STATEMENT

1. **Subject Matter Jurisdiction in the District Court.** The District Court had subject matter jurisdiction over the Plaintiff's suit pursuant to 28 U.S.C. § 1332(a)(1). *See* ROA.16-17, ROA.407-408

2. **Jurisdiction in the Court of Appeals.** On November 18, 2024, the District Court entered a final judgment in favor of Appellee. *See* ROA.4751-52 On December 9, 2024, Appellant moved to amend the final judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See* ROA.4797-4848 The District Court heard oral argument and entered its Order denying Appellant's motion on September 19, 2025. *See* ROA.4917-4922 On October 17, 2025, Appellant filed a timely notice of appeal. *See* ROA.4930-31 This Honorable Court has original appellate jurisdiction over the instant appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether it was an abuse of discretion for the court to allow testimony and evidence disputing the customer list as a trade secret when it had decided that issue as a matter of law?

2. Whether it was an abuse of discretion for the court to allow testimony that PLS failed to gain the restricted customers back when it was irrelevant for any cause of action or damages?

3. Whether it was an abuse of discretion for the court to deny PLS' Rule 59(e) motion when PLS showed a manifest error of law and fact?

## STATEMENT OF THE CASE

This case concerns the misappropriation of Appellant, Pittsburgh Logistics Services' ("PLS" or "Appellant"), confidential trade secrets, such as its customer list. Specifically, PLS maintained proprietary information about its customers for its brokerage efforts. Andrew Barricks ("Mr. Barricks"), an employee of PLS at the time, utilized PLS's confidential customer list to solicit PLS's customers. Prior to leaving PLS, Mr. Barricks shared a customer list and associated trade secret information with GRTM, with their knowledge that such came from PLS. This allowed GRTM to set up these customers in their system so Mr. Barricks could use it to compete with PLS when he arrived, all in violation of his agreements with PLS. Subsequently, Mr. Barricks terminated his employment with PLS on April 14, 2020, and began working for Appellee, Glen Rose Transportation Management ("GRTM" or "Appellee"). Soon after Mr. Barricks began his employment with GRTM, six (6) of PLS's customers left PLS and began working with GRTM. PLS brought causes of action against GRTM.

Throughout the course of the litigation, the District Court ruled that the customer list at issue was a trade secret. *See* ROA.5252 at ¶¶

8-13. Despite its previous ruling, the District Court impermissibly admitted GRTM's testimony and evidence disputing that the customer list was, in fact, a trade secret over PLS's valid objection. This was a ruling the District Court never overturned, nor could it. Therefore, admission of this evidence and testimony was not harmless and influenced the jury's verdict by putting a point of law in dispute that was already decided by the District Court.

Similarly, the District Court also allowed unduly prejudicial testimony, which tainted the jury and substantially prejudiced Appellant's case. For example, the District Court allowed testimony that PLS failed to regain the restricted customers. This testimony was wholly irrelevant to any of the claims or damages sought by PLS and unduly prejudiced the jury. Indeed, the entire purpose of having a non-solicitation agreement and notifying Appellee was so that PLS would not have to pursue the restricted customers and preserve its damages.

As a result, the jury returned a verdict in favor of the Appellee, and the District Court entered a final judgment. Appellant filed a post-trial Rule 59(e) Motion to Amend the Judgment based on the trial errors and its objections. However, after oral argument, the District Court denied

Appellant's Motion because it failed to show "a manifest error of law." As stated above, the District Court made several errors of law and, thus, wrongly denied Appellant's Motion.

## SUMMARY OF THE ARGUMENT

There were three (3) significant errors made by the District Court. First, the District Court allowed testimony and evidence disputing that the customer list was a trade secret despite already ruling that it was a trade secret. This violates the law of the case doctrine, which mandates that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case or litigation. Here, the District Court made a legal ruling that the customer list was to be treated as a trade secret. As such, the customer list should have been treated as a confidential trade secret throughout all stages of the case. However, in direct contradiction to the law of the case doctrine, the District Court allowed evidence and testimony disputing that the customer list was a trade secret and undermining the efficacy of the non-solicitation agreement, both of which had already been decided. As such, the District Court committed error and affected the jury's verdict. Second, the District Court allowed testimony that PLS

failed to regain customers from GRTM, which was irrelevant to any claim for damages, substantially prejudicial, and violates Rule 403 of the Federal Rules of Evidence. In fact, there was no reason at all for the District Court to allow this highly prejudicial testimony. Third and finally, the District Court denied PLS's Rule 59(e) Motion to Amend the Judgment for allegedly failing to show a "manifest error of law." The District Court committed error because PLS did show a manifest error of law and fact, and the District Court wrongly denied its Motion.

## STATEMENT OF FACTS

PLS is a provider of third-party logistics services to a wide array of industries. PLS also coordinates the transportation of freight between its customers and its carriers. This allows PLS to obtain savings and efficiencies for its customers. To facilitate its operations and obtain efficiencies, PLS maintains a system of proprietary client databases and logistics management. As a broker of its services and through its databases, including Salesforce, to which Mr. Barricks had full access prior to leaving, PLS compiled proprietary customer information, which included: the identity of customers; the customer contacts responsible for the shipment of certain freight; the industry segments in which they operate; the particular shipping lanes where the customer requires freight transportation; the required equipment to move the freight; contract terms; pricing and other financial parameters and time constraints for a customer's freight. The customer information was highly confidential to PLS and constituted a valuable, proprietary asset. At all relevant times, GRTM represented itself as a leading provider of truckload flatbed freight brokerage. In other words, GRTM was a direct competitor of PLS in freight brokerage in nearly the same locale.

In 2012, PLS decided to hire Mr. Barricks, and he started his employment with PLS as an Account Executive Trainee. By all accounts, Mr. Barricks was successful in his role at PLS and eventually worked his way up through a variety of management and leadership positions, including Group Sales Manager. Mr. Barricks was also responsible for training, and sales and customer development in his various roles with PLS. He interacted with PLS customers daily to provide strategic supply-chain solutions tailored to specific customer needs.

As a condition of his employment with PLS, Mr. Barricks entered into an employment agreement that contained confidentiality, non-competition, and non-solicitation clauses. Mr. Barricks initially entered into an employment agreement in 2012, but he entered into an updated agreement in 2016 that contained similar, but updated language. Mr. Barricks' employment prohibited him from "directly or indirectly, divulge, furnish or make accessible to any other person, business, firm, or corporation, or use in any way other than for the benefit of the business" any confidential information of PLS. *See* ROA.53 This confidential information included (but was not limited to): information and knowledge pertaining to products, ideas, trade secrets, proprietary

information, advertising, distribution and sales methods, sales and profit figures, customers and client lists, and relationships between PLS and sales representatives, customers, clients, suppliers, and others who have business dealings with PLS. His 2016 employment agreement also provided a non-solicitation provision, which stated "[f]or a period of 2 years after the termination of my employment, for any reason, [Mr. Barricks] agrees not to directly or indirectly, anywhere in the United States, offer or attempt to offer any Prohibited Services (as defined herein) to any Restricted Customers (as defined herein) without first obtaining [PLS's] written approval."*See* ROA.54

Despite his agreements to the contrary, Mr. Barricks started using PLS's confidential customer lists to solicit customers while he was still employed by PLS. In fact, as early as March 2020, Mr. Barricks was using PLS's trade secret and other associated documents to solicit customers to his new prospective employer, GRTM. *See* ROA.3480-3496; ROA.3507-08, ROA.4883 and ROA.4886 The customer list Mr. Barricks used and sent to GRTM contained a confidential customer list and other associated information containing the same information as the previous

lists he sent himself.[1] In fact, GRTM even acknowledged the receipt of PLS's documents, and at trial the same type of information would be proprietary and confidential for them. *See* ROA.3519-3522, 4833-4837, 4881-4883 Ultimately, and in pertinent part, PLS sued Mr. Barricks for breach of contract and GRTM for violations of DTSA, TUTSA, and unjust enrichment, after Mr. Barricks took customers when he resigned on April 9, 2020.[2] Mr. Barricks and GRTM kept servicing them even after they were on notice of the lawsuit and the agreements. ROA.4715, 4719-20, 4888-4891

In Mr. Barricks' case, the District Court located in the Southern District of Texas held a bench trial and issued Findings of Fact and Conclusions of Law, which the District Court in this case relied upon when ruling on both GRTM and PLS's Motions for Summary Judgment.

---

[1] Although Mr. Barricks e-mailed himself a customer list, this is not the customer list or the customers at issue, even though they are included on that list. Instead, the trade secret customer list and other associated documents at issue, as well as the restricted customers, were requested through PLS's Motion to Compel, which was granted by the District Court. *See* ROA.595-99 As stated above, the customer list in the instant case contains all the same information.

[2] The cases against GRTM and Mr. Barricks were brought separately. Specifically, the case against Mr. Barricks was brought in the Southern District of Texas, while the case against GRTM was brought in the Western District of Texas, Waco Division.

Specifically, the Court in Mr. Barricks' case ruled that the customer list at issue was a trade secret as a matter of law and Mr. Barricks had breached his non-solicitation agreement with PLS; the Court further ordered Mr. Barricks to disgorge any gain he realized from it. *See* ROA.437; *Pittsburgh Logistics Sys., Inc. v. Barricks*, No. 4:20-CV-04282, 2022 WL 2353334, at *9 (S.D. Tex. June 30, 2022). Based on this ruling, the District Court also ruled, in its Order Denying Plaintiff's Second Motion for Summary Judgment, that "the *Barricks* Court already considered and ruled on whether the information is trade secrets. The *Barricks* Court found, as stated earlier: 'the customer list constituted a trade secret.'" ROA.1505

After denying multiple Motions for Summary Judgment brought by both Appellant and Appellee in the instant case, a jury trial was held. However, before voir dire and the start of the trial, this exchange occurred:

> MR. SIEGMUND: Yes, and I'll be very brief, Your Honor. I'm just going to ask some questions about trade secrets, not in -- not in detail, but there seems to still be a dispute about whether the Court found this new customer list to be a trade secret, and if that is the case, obviously, I don't want to get myself into trouble. I don't think that's what the Court did, but I'm not trying to be difficult. I just want to make sure I

> don't step on anyone's toes. And I have the two lists so you can kind of see what I'm talking about, if that's helpful, but that's what I just needed clarity on. I don't want to go into that if the Court really did mean to say that it was.
>
> THE COURT: Well, and -- yeah, it's my recollection that we did find that it is in line -- you know, in line with what Judge Ellison's findings were.
>
> MR. SIEGMUND: Okay.
>
> THE COURT: I understand the lists are slightly different, but –
>
> MR. SIEGMUND: Okay. And the only reason I'm bringing it up – I'm not trying to belabor this point, Judge but this list was never before Judge Ellison. It occurred -- it came in this case.
>
> THE COURT: Right, right.
>
> MR. SIEGMUND: This one absolutely was, and we're not disputing that that was a trade secret, and -- but if the Court's ruling was this is a trade secret, I just want to make sure that that's what –
>
> THE COURT: Yeah. As of today, we're going to treat it as a -- trade secrets.
>
> MR. SIEGMUND: Okay. Thank you.

ROA.5251-52 As such, the Court, in both its second Summary Judgment and before trial, ruled that the customer list at issue was a trade secret.

Despite this clear legal ruling, during trial, Appellee introduced evidence attempting to contradict the legal ruling that the customer list

was, in fact, a trade secret, to which PLS objected. *See* ROA.5452-53, 5454-55, 5787-88 However, despite PLS's objections, the District Court allowed evidence testimony and evidence contradicting that the customer list was, in fact, a trade secret. The District Court also made another fatal error during the trial. On Day 2 of the trial, the District Court allowed testimony and evidence regarding PLS's failure to regain its restricted customers from Appellee. This was irrelevant to any cause or claim made, and PLS objected to its introduction. However, its objection was overruled. As a result of these clear errors, the jury found in favor of Appellee and even found that the customer list was not a trade secret. Subsequently, the District Court entered a final judgment.

PLS immediately filed a Rule 59(e) Motion for Reconsideration of the Final Judgment and the Jury Verdict, which GRTM opposed. In its Motion, PLS made clear that the standard GRTM cited for a Motion for Reconsideration was legally wrong. The District Court ordered a hearing on the Motion. In its Order, the Court further ordered Byron Stinson ("Mr. Stinson"), GRTM's Corporate Representative, to appear. However, the Court did not order any corporate representative from PLS to appear. Prior to the hearing's commencement, the Court took Mr. Stinson to

chambers without his or PLS's counsel. The substance of that meeting was not disclosed to PLS. After a hearing on the Motion, the District Court ruled that PLS's Motion should be denied, as it failed to show a manifest error of law. Following the hearing, counsel for PLS requested that GRTM's counsel, Wes Dauphinot ("Mr. Dauphinot"), disclose the communication Mr. Stinson had with the Court. Mr. Dauphinot stated that he would confer with Mr. Stinson. On October 7, 2025, Mr. Dauphinot informed PLS's counsel that Mr. Stinson sent a disrespectful and threatening letter to the Court, for which the Court reprimanded him. Mr. Dauphinot represented to PLS's counsel that the substance of the letter regarded the Court's timeline to decide the pending motions and threatened to involve Congressional representatives if the Court did not rule soon. The Court disclosed its communications but refused to release the substantive letter. As such, the District Court upheld its Final Judgment. PLS timely filed its Notice of Appeal. GRTM also filed a Notice of Appeal.

## ARGUMENT

### I. Standard of Review.

This Court "review[s] the district court's evidentiary rulings for abuse of discretion." *Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 546 (5th Cir. 2024) (citing *Ratliff v. Aransas County*, 948 F.3d 281, 286 (5th Cir. 2020)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (citing *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod., Inc.*, 951 F.3d 248, 256 (5th Cir. 2020)). Similarly, this Court "review[s] the denial of relief under Rule 59(e) for abuse of discretion." *United States v. Nelson*, No. 22-30485, 2023 WL 3376556, at *1 (5th Cir. May 11, 2023) (citing *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019)) (alterations added).

## II. The District Court committed reversible error by refusing to apply the law of the case doctrine, collateral estoppel, and res judicata, and allowing Appellee to introduce evidence and testimony contradicting the legal ruling that the customer list was a trade secret.

"The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (citation and internal quotation marks omitted). "The law-of-the-case doctrine 'is based on the salutary and

sound public policy that litigation should come to an end.'" *Matter of AKD Invs.*, 79 F.4th 487, 491 (5th Cir. 2023) (citing and quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)). "The law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). However, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" *Id.* (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)).

Here, two (2) District Courts ruled that PLS's customer list at issue was a confidential trade secret. Moreover, the District Court in this case ruled that the customer list was a trade secret. This exchange occurred between Appellee's counsel and the District Court before the start of trial:

> MR. SIEGMUND: Yes, and I'll be very brief, Your Honor. I'm just going to ask some questions about trade secrets, not in -- not in detail, but there seems to still be a dispute about whether the Court found this new customer list to be a trade secret, and if that is the case, obviously, I don't want to get myself into trouble. I don't think that's what the Court did, but I'm not trying to be difficult. I just want to make sure I don't step on anyone's toes. And I have the two lists so you can kind of see what I'm talking about, if that's helpful, but that's what I just needed clarity on. I don't want to go into that if the Court really did mean to say that it was.

> THE COURT: Well, and -- yeah, it's my recollection that we did find that it is in line -- you know, in line with what Judge Ellison's findings were.
>
> MR. SIEGMUND: Okay.
>
> THE COURT: I understand the lists are slightly different, but –
>
> MR. SIEGMUND: Okay. And the only reason I'm bringing it up -- I'm not trying to belabor this point, Judge but this list was never before Judge Ellison. It occurred -- it came in this case.
>
> THE COURT: Right, right.
>
> MR. SIEGMUND: This one absolutely was, and we're not disputing that that was a trade secret, and -- but if the Court's ruling was this is a trade secret, I just want to make sure that that's what –
>
> THE COURT: *Yeah. As of today, we're going to treat it as a -- trade secrets.*
>
> MR. SIEGMUND: Okay. Thank you.

ROA.5251-52 (emphasis added). Thus, two (2) different District Courts found that the customer list was a trade secret.

Despite these clear rulings that the customer list was a trade secret, the District Court wrongly allowed evidence and testimony contradicting this very ruling. Specifically, the District Court allowed Appellee's counsel to ask the following questions and present the following testimony:

Q. Okay. And did A.J. Barricks have access to that?

A. Yes.

Q. Okay. And so he could have looked up all of the all of the customers that were handled by other sales reps for the whole company.

A. Yes, he could.

Q. And you-all have 11 locations.

A. Yes, yes.

Q. And do you have any evidence that he did that?

A. No.

Q. So it was just his accounts; right?

A. The accounts he serviced while being at PLS.

Q. So would you agree with me that if he was being malicious that he could have printed out all of that information and taken it with him because he had access to it?

MR. BANES: Objection, calls for a legal conclusion.[3]

THE COURT: I'll overrule the objection. You can answer.

---

[3] "If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. An argument must be raised to such a degree that the district court has an opportunity to rule on it." *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013). Specifically, a party must "make an objection that is 'sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction.'" *United States v. Bravo*, 852 Fed.Appx. 790, 794 (5th Cir. Apr. 20, 2021) (citing and quoting *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017)). Since PLS objected and clearly stated the basis for such objection, this issue is preserved on appeal.

ROA.5453-54 As demonstrated by the above exchange, Appellee elicited a line of questioning demonstrating that Mr. Barricks had access to the customer list in an attempt to disprove that the customer list was a trade secret and that Mr. Barricks misappropriated that trade secret. PLS objected, but the Court overruled this objection and allowed this testimony in spite of the prior ruling that the customer list was a trade secret.

This testimony clearly contradicts the District Court's prior ruling and violates the law of the case doctrine because the District Court already conclusively ruled that the customer list constituted a trade secret. As such, the District Court abused its discretion by allowing such testimony and evidence in the first instance. *See United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009) ("A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence.").

Even if two (2) District Courts had not made explicit rulings that the customer list at issue was a trade secret (which they did), the customer list was a trade secret and became the law of the case by necessary implication. Both District Courts treated the list as a trade

secret and confidential. As such, even if this Court finds that there was no specific legal ruling (which there was), the customer list was still considered a trade secret by necessary implication.

Additionally, this violation of the law of the case doctrine was not just a harmless error. An error is harmless when it "do[es] not affect the substantial rights of the parties." 28 U.S.C. § 2111; *see Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009). "An error does not affect substantial rights 'if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.'" *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995). However, the United States Supreme Court has "previously warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record." *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009) (citing *Kotteakos v. United States*, 328 U.S. 750, 760 (1946)).

Here, the trial court's error was not harmless and influenced the jury and its verdict. Indeed, the jury verdict specifically found against PLS on its TUTSA and DTSA claims. *See* ROA.4743-44 In essence, this

requires the jury to make the determination that the customer list was *not* a trade secret. This is particularly true where, as here, it was unrebutted that Mr. Barricks sent not only customer lists and other associated information to Appellee to "set up" his customers, but also what the profit would be based on historical numbers in PLS's Saleforce. *See* ROA.3493, 3500-3501, 3507-3508, 3521-22, 4712 & PE 7-8 & 12.[4] As such, the District Court's allowance of testimony and evidence contradicting its earlier ruling potentially influenced the jury and skewed its verdict. Therefore, any error stemming from this allowance of testimony and evidence was not harmless and affected PLS's substantial rights.

What is more, Appellees have cross-appealed and continue to argue that the customer list is not a trade secret despite the clear previous legal rulings. *See* ROA.4934-39 Such a response by Appellees is an admission that the customer list being a trade secret was essential to the jury's verdict and its case. As such, any error regarding the customer list's status as a trade secret is not harmless and prejudiced PLS's case.

---

[4] These cites will be corrected in PLS's reply brief as these documents are supplemental records and PLS has currently moved to supplement.

This Court can also find reversible error on another ground: issue preclusion or collateral estoppel. In the Fifth Circuit, "collateral estoppel applies when a previously litigated issue of law or fact was identical to the present issue, actually litigated, necessary to a final judgment, and reviewed under the same standard as the present issue." *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829 (5th Cir. 2006). Collateral estoppel will apply in a second proceeding if the issues are identical to the first proceeding, even if the claims themselves are separate. *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).

Additionally, "[w]hile complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation." *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005). For the purposes of collateral estoppel, "[p]rivity has been described as nothing more than a 'legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'" *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003)

(citing and quoting *Southwest Airlines, Inc. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)). Here, preclusion is met. In fact, both Appellee's President and General Manager admitted that they would not have had these new customers without Mr. Barricks first obtaining them, particularly the new flatbed clients. ROA.4887 and ROA.4891-93

As stated previously, it is beyond dispute that the issues in both District Court cases regarding the customer list as a trade secret were identical and that the issue was previously litigated. Specifically, in both District Court cases, claims alleging a misappropriation of a trade secret under TUTSA and DTSA, namely PLS's customer list, were brought. *See* ROA.31-57 Moreover, the facts supporting the claims in both cases relied upon the customer list being a trade secret. Since the issue of the customer list being a trade secret was an essential element of PLS's TUTSA and DTSA claims against Mr. Barricks and Appellee in separate cases, the issue of the customer list being a trade secret is identical in both cases for the purposes of collateral estoppel.

What is more, there is privity between Mr. Barricks and Appellee in the prior litigation concerning Mr. Barricks before the District Court in the Southern District of Texas. Here, Appellee is the employer of Mr.

Barricks, and both Appellee and Mr. Barricks were sued based on the same facts originating from Appellee's hiring of Mr. Barricks. *See Beltran v. Lockheed Martin Corp.*, 760 F. Supp. 3d 483, 487 (N.D. Tex. 2024) (noting that the union and its employees were in privity with each other for purposes of collateral estoppel). As such, there is privity between Mr. Barricks and Appellee. Moreover, Appellee paid for Mr. Barricks' attorneys' fees in his own case.

Since the issue of the customer list was decided in Mr. Barricks' case in a final judgment on the merits, those same factual circumstances are present in Appellee's case, and Appellee and Mr. Barricks are in privity, collateral estoppel bars the District Court from allowing evidence and testimony contradicting that the customer list is a trade secret and Appellee from relitigating that very same issue. As such, the District Court's allowance of testimony disputing this issue was an abuse of discretion.

Lastly, res judicata also bars the re-litigation of the customer list as a trade secret through the introduction of contrary testimony. Under res judicata, a fact that has been previously determined by a prior final judgment must "be taken as conclusively established." *Comer v. Murphy*

*Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (quoting *Landmark Land Co. v. Office of Thrift Supervision*, 990 F.2d 807, 811 (5th Cir.1993)). The Court's Final Jury Instructions stipulated that the customer lists under both statutes were PLS's trade secrets. The Court's reasoning for finding that the customer list was a trade secret rested on res judicata grounds. Thus, the customer list was a trade secret, and any testimony or evidence disputing otherwise was barred by the doctrine of res judicata. Therefore, the District Court abused its discretion by allowing evidence disputing whether the customer list was a trade secret or not. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (finding an abuse of discretion where a district court ignored Fifth Circuit precedents, misapplied the law, and misapprehended the relevant facts).

## III. The District Court erred by allowing evidence and testimony demonstrating that PLS failed to regain its restricted customers, as this was irrelevant to any claim or damage.

The District Court committed reversible error when it allowed testimony and evidence demonstrating that PLS failed to regain any restricted customers because the testimony and evidence were irrelevant to PLS's claims. Pursuant to Rule 401 of the Federal Rules of Evidence,

"[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is inadmissible." *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 740 (5th Cir. 2020) (citing Fed. R. Evid. 402).

Here, PLS objected to irrelevant testimony about PLS's efforts to regain restricted customers. Specifically, this exchange occurred during Day 2 of the Trial:

> Q. Okay. Now I'm going to switch gears one more time, Mr. Penn, and this is kind of the last area I'm going to talk with you about before we turn you over to the other side to talk. Now, there's been some suggestion that PLS did not try to retain this business from these customers. How do you how do you respond to that?
>
> A. When anyone leaves, our process is -- we don't like seeing people leave, but when anyone leaves, our process is the same. We look at the customer base and then we reassign a new customer owner or account executive for that client and then we do our best to get the customer on the phone as well as send E-mails, reestablish relationship.

ROA.5420 Also, the District Court allowed, over objection, the customers to testify as to how they would rather stay with Mr. Barricks and that PLS did not pursue them. This testimony was not relevant to a TUTSA,

DTSA, or unjust enrichment claim. TUTSA and DTSA do not require evidence that the Plaintiff attempted to regain restricted customers as a result of a Defendant's use of Plaintiff's trade secrets. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 (TUTSA); 18 U.S.C. § 1836 *et seq.*; *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025) ("Both statutes require a plaintiff to demonstrate: (1) the existence of a trade secret; (2) that the trade secret was misappropriated; and (3) that the misappropriated trade secret was used without authorization."). Instead, TUTSA and DTSA only require that Plaintiff prove the Defendant misappropriated its trade secrets. As such, the testimony concerning whether PLS attempted to regain its restricted customers is irrelevant under Rule 401 as this testimony does not make a TUTSA or DTSA claim more or less likely, nor does it fulfill an element of either claim. Therefore, the District Court erred by failing to exclude Appellee's testimony as irrelevant and inadmissible under Rule 401.

Moreover, Appellee introduced six (6) customers who testified that PLS could not regain its restricted customers. However, this is irrelevant to what PLS was claiming, specifically on the issue of damages. These customers' testimony about regaining lost customers goes to the issue of

lost profit damages, which are not the damages PLS claimed. *See* ROA.3096 Instead, PLS was seeking damages of net profits and expectancy damages, and damages for unjust enrichment. *See Kellmann v. Workstation Intergrations, Inc.*, 332 S.W.3d 679 (Tex. App.—Houston [14th] 2010). The issue of unjust enrichment is not lost profits, but rests only on Appellee receiving and retaining a benefit it should not have. In other words, Appellee pursued these customers using Mr. Barricks, thereby breaching various covenants, which was unlawful, improper, and an unjust benefit. As such, any testimony or evidence that purported to demonstrate lost profits is irrelevant and should have been excluded by the District Court.

Additionally, even if the testimony was relevant evidence under Rule 401 (which it is not), the District Court abused its discretion by failing to exclude it under Rule 403 because it was unfairly prejudicial, confused the jury, and misled the jury. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Relevant evidence is

inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993) (citing and quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.)).

Here, the testimony concerning PLS's failed efforts to regain its restricted customers by competing with Mr. Barricks--a person with whom they should not have had to compete—was unfairly prejudicial and substantially outweighed any probative value it may have had, and both confused and misled the jury. Specifically, the testimony had an effect on the jury's verdict concerning the issue of damages. When the jury began to deliberate, jury members began to question the issue of damages and whether PLS's efforts to regain its customers had an effect on its damages. *See* ROA.6045 The jury even asked the District Court if they could award PLS no damages, to which the District Court only referred the jury back to its instructions. *See* ROA.6045-47 However, the issue of PLS not regaining its customers has no bearing on its damages for a misappropriation of its trade secrets and, as such, this testimony misled and confused the jury on the issue of damages and, ultimately, on liability

as well. This actually resulted in the jury awarding zero (0) damages. Additionally, the jury confused the issue of lost profits and unjust benefit damages that PLS was seeking, as explained above. As such, it was unfairly prejudicial to PLS's case, and the District Court abused its discretion under Rule 401 and Rule 403 in admitting such testimony. *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (holding that expert testimony should be excluded under Rule 403 since it lacked reliable support and would not assist the jury); *see also Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1308 (5th Cir. 1991) (noting that a magistrate had determined that an investigative report that confused the issues for the jury should be excluded under Rule 403).

## IV. The District Court committed reversible error by denying PLS's Rule 59(e) Motion when PLS showed a manifest error of law.

A losing party to a judgment may file a motion to amend a judgment "no later than 28 days after the entry of [a] judgment." Fed. Rule of Civ. Pro. 59(e). The movant may assert a Rule 59(e) motion when 1) there has been a change in the law, 2) there is newly discovered evidence, or 3) to correct a clear error of law or fact to prevent manifest injustice. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule

59(e) motion to alter or amend a judgment is considered a final decision when denied, but the denial can be reviewed by the appellate court if it is timely filed within the prescribed period after the district court's ruling on the motion. *See Harrell v. Dixon Bay Transp. Co.*, 718 F.2d 123 (5th Cir. 1983) (holding that a Rule 59(e) motion suspends the thirty (30)-day time period for filing a notice of appeal until the district court rules on the motion.).

Here, the District Court denied PLS's Motion to Amend a Judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See* ROA.4917-4922 Specifically, the District Court determined, after briefing and oral argument, that PLS "ha[d] failed to demonstrate that the judgment contains a manifest error of law or fact." ROA.4922 However, the District Court did err because PLS showed a manifest error of law and fact.

Under Texas law, federal law, and the District Court's jury instructions, one way PLS could have proved misappropriation was by showing "that [Appellee] knew or had reason to know that the trade secret was acquired by improper means." *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 844 (Tex. App.—Corpus Christi 2017, no pet.) (citing TCPRC § 134A.002(3)(A)). Under this alternative,

proving "use" of the trade secret was not required. *Id.* It is important to note that "use" is a required element under Texas common law misappropriation, not under TUTSA. *His Co., Inc. v. Stover*, 202 F. Supp. 3d 685, 692 (S.D. Tex. 2016), *vacated as moot*, No. 4:15-CV-00842, 2016 WL 6134939 (S.D. Tex. Sept. 8, 2016) (highlighting the differences between common law misappropriation and TUTSA); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (relying on case law that preceded TUTSA and DTSA's enactment); *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018) (claim based on common law misappropriation of trade secrets).

Additionally, other federal jurisdictions recently recognized that, in relation to TUTSA, "trade secret misappropriation may be based on either a 'use' theory or an 'acquisition by improper means' theory, and alternative theories may be submitted to the jury if supported by the pleadings and evidence." *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 3637801, at *12 (E.D. Tex. July 6, 2020). The Court in *Accresa Health* clarified that a previous TUTSA decision "did not conclude that 'use' is an essential element of [a plaintiff]'s trade secret misappropriation claims under TUTSA and DTSA." *Id.* at *11 (clarifying

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 350 (E.D. Tex. 2019)).

Appellee's arguments fail because the customer list was established by the Court as a trade secret, and "use" was not a required element under TUTSA or DTSA. Therefore, this is not a case of PLS "simply disagree[ing] with the jury verdict." ROA.4922 Instead, the jury's verdict and the District Court's upholding of it were contrary to established law on TUTSA and DTSA and added an extra, unnecessary use requirement for TUTSA and DTSA. As such, the District Court erred and abused its discretion by denying PLS's Rule 59(e) Motion when the jury's verdict was based on a manifest error of law and fact, namely the extra use requirement.

What is more, PLS sought damages under the theory of unjust enrichment, which is available in TUTSA and DTSA claims. TCPRC § 134A.004(a); 18 U.S.C. § 1836(b)(3)(B)(i)(II). PLS's undisputed expert established that GRTM gained a total of $317,650.35 from servicing the restricted customers. ROA.5402 This gain remained unchallenged by GRTM throughout this case and trial. PLS should have been awarded $294,036.84 (to avoid double recovery) under its unjust enrichment

theory for trade secret misappropriation under TUTSA and DTSA. The jury and the District Court completely disregarded that PLS provided a benefit to Appellee and that Appellee refused to compensate PLS for that benefit. Therefore, the jury and the District Court again committed a manifest error of both law and fact. Additionally, as stated above, the jury confused and conflated the issues of gross lost profits and expectancy damages PLS was seeking as stated above. As such, the District Court abused its discretion by denying PLS's Rule 59(e) Motion.

Lastly, before the hearing on the Rule 59(e) Motion, Appellee's corporate representative had ex parte communications with the District Court. "[S]ubstantive ex parte communications with the Court are [generally] prohibited." *WMM v. Trump*, 2025 WL 1176980, at *1 (N.D. Tex. Apr. 21, 2025). Specifically, "[i]f a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." Code of Conduct for United States Judges, Canon 3(A)(4). PLS does not presume that the District Court engaged in inappropriate communications; it is the duty of its counsel to protect its interests. Part

of this duty necessarily includes confirming Mr. Dauphinot's representations, as mandated by Canon 3 of the Code of Conduct for United States Judges, to ensure there is no prejudice to PLS. While the District Court released most of its communications, it did not release the letter from Appellee. This letter and even just the appearance of impropriety or bias prejudices PLS and affects the other issues it has raised. As such, the District Court abused its discretion.

## CONCLUSION

For the foregoing reasons, the trial court's decision should be reversed.

Respectfully submitted,

**NEEL, HOOPER & BANES, P.C.**
By: *<u>/s/ Bryant S. Banes</u>*
**BRYANT S. BANES**
**Texas State Bar No. 24035950**
E-mail: bbanes@nhblaw.com
1800 West Loop South
Suite 1750
Houston, Texas 77056
Telephone: (713) 629-1800
Facsimile: (713) 629-1812
**ATTORNEY FOR PLAINTIFF/APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on **March 30, 2026**, I electronically filed the foregoing ***Corrected Appellants' Brief*** with the clerk of the court for the Fifth Circuit Court of Appeals, using the electronic case filing system of the court. Consistent with 5th Cir. R. 25.2.5, the electronic case filing system sent a "Notice of Docket Activity" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Wes Dauphinot
Attorney-in-Charge
State Bar No. 00793584
Law Office of Wes Dauphinot, PC
900 West Abram
Arlington, TX 76013
Phone: 817-462-0676
Fax: 817-704-4788
Email: wes@dauphinotlawfirm.com
*Attorneys for Defendant/Appellees*

*/s/ Bryant S. Banes*
Bryant S. Banes

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Length Limits, Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limit of Fed. R. App. P. 37(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2:

[x] this brief, which was produced using a computer, contains 7,068 words, *or*

[ ] this brief was handwritten or typewritten and does not exceed 30 pages, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Century Schoolbook, 14 Point font (Century Schoolbook, 12 point font for the footnotes), *or*

[ ] this brief has been prepared in a monospaced typeface using ________________________ with ______________________.

*/s/ Bryant S. Banes*
**BRYANT S. BANES**

Attorney for
Plaintiff/Appellant
Dated: **03/30/2026**

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (see 5th Cir. R. 25.2.13); (2) the electronic submission is an exact copy of the paper document (see 5th Cir. R. 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Bryant S. Banes*
**Bryant S. Banes**
Attorney for Plaintiff/Appellant
Dated: **03/30/2026**