**No. 25-50864**

---

# In The United States Court of Appeals

# for the Fifth Circuit

---

PITTSBURGH LOGISTICS SYSTEMS, INC.

*Plaintiff- Appellant/Cross-Appellee*

v.

GLEN ROSE TRANSPORTATION MANAGEMENT

*Defendant- Appellee/Cross-Appellant*

---

On Appeal from the United States District Court for the Western District of Texas,

Waco Division, Civil Action No. 6:20-CV-01173

---

# BRIEF AND RESPONSE FOR APPELLEE/CROSS-APPELLANT

---

Respectfully submitted,

By: */s/ Wes Dauphinot*
Wes Dauphinot
Texas State Bar No. 00793584

Law Office of Wes Dauphinot, PC
900 West Abram Street
Arlington, TX 76013
Phone: 817-462-0676
Fax: 817-704-4788
Email: wes@dauphinotlawfirm.com

*Counsel for Defendant- Appellee/Cross-Appellant*

**No. 25-50864**

---

# In The United States Court of Appeals

# for the Fifth Circuit

---

PITTSBURGH LOGISTICS SYSTEMS, INC.

*Plaintiff- Appellant/Cross-Appellee*

v.

GLEN ROSE TRANSPORTATION MANAGEMENT

*Defendant- Appellee/Cross-Appellant*

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant certifies that the following listed persons and entities, as described in the fourth sentence of rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Appellee/Cross-Appellant**
Glen Rose Transportation
Management

**Appellant/Cross-Appellee**
Pittsburg Logistics Systems,
Inc.

**Counsel for Appellee/Cross-Appellant**
Wes Dauphinot
Texas State Bar No. 00793584
Law Office of Wes Dauphinot, P.C
900 West Abram Street
Arlington, TX 76013
Phone: 817-462-0676
Fax: 817-704-4788
Email: wes@dauphinotlawfirm.com

**Counsel for Appellant/Cross-Appellee**
Bryant S. Banes
Texas State Bar No. 24035950
Email: bbanes@nhblaw.com
NEEL, HOOPER & BANES, P.C.
1800 West Loop South
Suite 1750
Houston, TX 77056
Phone: (713) 629-1800
Facsimile: (713) 629-1812

*/s/ Wes Dauphinot*
Attorney for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellee/Cross-Appellant Glen Rose Transportation, Inc. does not request oral arguments on these matters and believes that the briefing will provide the Court with all necessary information to aid the decisional process in this case. Rule 34(a)(C) FRAP.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS 3

STATEMENT REGARDING ORAL ARGUMENT 5

TABLE OF CONTENTS 6

TABLE OF AUTHORITIES 7

JURISDICTIONAL STATEMENT 10

STATEMENT OF ISSUES PRESENTED FOR REVIEW FOR CROSS-APPELLANT/APPELLEE'S BRIEF 11

SUMMARY OF ARGUMENT FOR CROSS-APPELLANT/ APPELLEE'S BRIEF 12

SUMMARY OF ARGUMENT FOR CROSS-APPELLANT/ APPELLEE'S RESPONSE TO APPELLANT/CROSS-APPELLEE'S BRIEF 13

STATEMENT OF FACTS 14

ARGUMENT FOR CROSS-APPELLANT/APPELLEE GLEN ROSE'S BRIEF 19

1. Standard of Review 19

2. Argument 19

ARGUMENT AGAINST APPELLENT/CROSS-APPELLEE PLS'S BRIEF 22

1. PLS Point No. 1 22

    a. Standard of Review 23

    b. Argument 23

2. PLS Point No. 2 ........ 27

3. PLS Point No. 3 ........ 29

a. Reviewing Rule 59(e) FRCP Motions on Appeal ........ 30

b. Manifest Error of Law ........ 30

c. Manifest Error of Fact ........ 35

4. PLS Point No. 4 ........ 40

CONCLUSION ........ 42

CERTIFICATE OF SERVICE ........ 44

CERTIFICATE OF COMPLIANCE ........ 45

CERTIFICATE OF COMPLIANCE WITH ECF STANDARDS ........ 46

# TABLE OF AUTHORITIES

**Cases**

*Alameda Films SA de CV v. Authors Rights Restoration Corp., Inc.*, 331 F.3d 472, 483 (5th Cir. 2003) ........ 26

*Alford v. Access Industries, Inc.*, No. 1:15-CV-59, 2016 WL 7665860, at *3 (E.D. Tex., April 26, 2016), ........ 37

*Baker v. Puckett*, No. 4:18-CV-599, 2021 WL 2338869, at *2 (E.D. Tex. Jan. 22, 2021) ........ 38

*Clancy v. Employers Health Ins. Co.,* 101 F.Supp.2d 463, 465 (E.D.La.2000) ........ 29

*El Paso Indep. Sch. Dist. v. Richard R.,* 591 F.3d 417, 422–23 (5th Cir.2009) ........ 19

*FDIC v. Mijalis,* 15 F.3d 1314, 1318–19 (5th Cir.1994) ........ 22

*Garcia v. San Benito Consolidated Independent School District*, 2023 WL 4494396 (S.D. Tex., Brownsville Division, June 12, 2023) ........ 38

*In re Deepwater Horizon*, 785 F.3d 986, 992 (5th Cir. 2015) ........ 37

*In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir.2002) ........ 29

*Jimenez v. Wood County, Tex.,* 660 F.3d 841, 844-845 (5th Cir. 2011, en banc) ........ 33

*JTB Tools & Oilfield Services, LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) ........ 28

*Louviere v. Carewell Hosp., LLC*, No. CV 18-6419, 2020 WL 491222, at *2 (E.D. La. Jan. 29, 2020) ........ 38

*Manderson v. Chet Morrison Contractors, Inc.,* 666 F.3d 373, 384 (5th Cir.2012) ........ 19

*McCoy v. Kuku*, No. CV 3:17-0275, 2019 WL 4097246, at *1 (S.D. Tex. Aug. 29, 2019) ........ 38

*MIECO LLC v. Pioneer Nat. Res. USA, Inc.*, No. 3:21-CV-1781-B, 2023 WL 3259492, at *3 (N.D. Tex. May 4, 2023) ........ 38

*Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1220 (5th Cir. 1995) ........ 22

*Pacheco v. Mineta,* 448 F.3d 783, 793 (5th Cir.2006)........ 19

*Parra v. Interstate Express, Incorporated*, 2022 WL 421411 (5th Cir. 2022)........ 35

*Schwarz v. Folloder,* 767 F.2d 125, 131 (5th Cir.1985)........ 19

*Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir. 1982)........ 35

*Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)........ 29

*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)........ 35

*Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)........ 29

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125 at 128 (5th Cir. 2015)........ 19

*U.S. ex rel. Long*, 807 F.3d at 132........ 21

*U.S. v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006)........ 27

*United States Aviation Underwriters, Inc. v Olympia Wings, Inc*., 896 F.2d 949, 956 (5th Cir. 1990)........ 27

*W.M.M. v. Trump*, 2025 WL 1176980 (N.D. Tex., Abilene Division, April 21, 2025)........ 41

*Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989)........ 29

*Wyvill v. United Companies Life Ins. Co*., 212 F.3d 296, 302 (5th Cir. 2000)........ 22

**Statutes**

11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE 2806 at 43 (1973)........ 28

11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice & Procedure § 2810.1, at 124 (2d ed.1995))........ 23

28(a)(8) FRAP........ 21

28(a)(9)(A) FRAP........ 19

CODE OF CONDUCT FOR FEDERAL JUDGES, CANON 3(A)(4)........ 34

DEFEND TRADE SECRETS ACT ........................................................................................ 13

*Reitz v. City of Abilene*, 2021 WL 5095378 (N.D. Tex., Abilene Division, October 1, 2021)..... 30

Rule 103 FRE........................................................................................................ 21

Rule 51 FRAP ........................................................................................................ 26

Rule 59(a) FRCP..................................................................................................... 28

TEX. CIV. PRAC. & REM. CODE §134A.002(A)-(B); ............................................................ 25

TEXAS UNIFORM TRADE SECRETS ACT ........................................................................ 13

## JURISDICTIONAL STATEMENT

The District Court for the Western Division of Texas had subject matter jurisdiction over the original suit pursuant to judicial transfer by the United States District Court for the Western District of Pennsylvania under 28 U.S.C §1404(a). [1]

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1291 because it is an appeal of the District Court's refusal to sign an order regarding relief granted in favor of the Defendant-Appellee/Cross-Appellant in a final order signed by District Judge Derek Gilliand on November 18, 2024.[2] Defendant-Appellee/Cross-Appellant timely filed their Notice of Appeal on October 28, 2025.[3]

---

[1] ROA.25-50864.131-139
[2] ROA.25-50864.4751-4752
[3] ROA.25-50864.4934-4935

## STATEMENT OF ISSUES PRESENTED FOR REVIEW FOR CROSS-APPELLANT/APPELLEE'S BRIEF

1. Whether it is an abuse of discretion for the court to refuse to sign an order regarding the prevailing parties' cost of court that were awarded to the prevailing party in the signed final judgment.

## SUMMARY OF ARGUMENT FOR CROSS-APPELLANT/APPELLEE'S BRIEF

The jury in this case came back from deliberations on November 14, 2024 and found that Defendant-Appellee/Cross-Appellant, Glen Rose Transportation, Inc. (hereinafter referred to as "Glen Rose") was not liable to the Plaintiff-Appellant/Cross-Appellee, Pittsburg Logistics Systems, Inc. (hereinafter referred to as "PLS") for unjust enrichment or misappropriating any trade secrets of PLS in violation of any law. The jury further determined that PLS was not entitled to any damages from Glen Rose. This Jury verdict form was verified by District Judge Gilliland on November 14, 2024 at 3:34 p.m.

The court entered a final order based on the jury's findings on November 18, 2024 that the Plaintiff take nothing, that the action be dismissed on its merits, and that the Defendant recover its costs from Plaintiff. It also ordered the Defendant to file bills of costs, in accordance with Local Rule CV-54, within fourteen days of the entry of this Final Judgment (emphasis added).

Defendant-Appellee/Cross-Appellant Glen Rose filed their Request to Enter Bill of Costs and Motion for Costs on November 24, 2024, however, the District Court has, to date, failed to rule on Glen Rose's Motion for costs. There is no doubt that Glen Rose was the prevailing party in this case based on the jury verdict. The signed final order from the court specifically awarded Glen Rose's

costs to them as the prevailing party in accordance with Federal Rule of Civil Procedure 54(d)(1). Failing to rule on this motion is a clear abuse of discretion.

## SUMMARY OF ARGUMENT FOR CROSS-APPELLANT/APPELLEE'S RESPONSE TO APPELLANT/CROSS-APPELLEE'S BRIEF

Appellant/Cross-Appellee failed to raise in its appellate brief any improper testimony or evidence for the court's consideration, therefore, Appellant/Cross-Appellee's appellate point regarding improper admission of testimony and/or evidence questioning Appellant/Cross-Appellee's customer list as a trade secret should be denied.

Appellant/Cross-Appellee's appellate point regarding improper admission of testimony and/or evidence from customers should be denied; Appellant/Cross-Appellee failed to raise in its appellate brief any improper testimony or evidence from customers for the court's consideration.

Appellant/Cross-Appellee's appellate point regarding the wrongful denial of its Rule 59(e) motion should be denied because there was no manifest error of law or fact in the jury verdict or the judgment.

## STATEMENT OF FACTS

Cross-Appellant/Appellee (hereinafter referred to as "Glen Rose" for clarity and brevity) submits these background facts for purposes of clarifying the appellate issues raised to this Court.

Glen Rose first addresses the "other" lawsuit which is the one filed against Andrew "AJ" Barricks. Glen Rose will only address the portions of the other lawsuit that are relevant to this appeal. Appellant/Cross-Appellee (hereinafter referred to as "PLS" for clarity and brevity) sued its former employee and sales manager, AJ Barricks, in United States District Court, Southern District of Texas, Houston Division, for, among other things, misappropriation of trade secrets and breach of noncompete and non-solicitation agreement. (Court's Findings & Conclusions, ROA.426). That case was tried in a one-day bench trial on April 4, 2022, before the Honorable Keith P. Ellison, United States District Judge. (ROA.427, top sentence "The Court held a one-day bench trial on these claims on April 4, 2022")(ROA.444). In support of its case, PLS presented a customer list at that trial labeled "AJ Lifetime Numbers 8.14.19" that contained "259 names of customers that Defendant Barricks serviced while employed by the Plaintiff" that contained such information as "total revenues on sales, total costs on sales, and profit margins". (ROA.436, ¶ 42). After reviewing this list, the trial judge held this list to be a trade secret. (ROA.436 ¶ 47). For a number of reasons, Judge Ellison

found that AJ Barricks did not "use" that trade secret (customer list "AJ Lifetime Numbers 8.14.19")[4] and found that PLS had not established misappropriation of trade secrets against Barricks. (ROA.439 ¶ 53). Judge Ellison found against PLS on all causes of action except breach of non-solicitation agreement and ordered AJ Barricks to pay PLS $23,613.51 in damages. (ROA.444 ¶ 74). Judge Ellison issued Findings of Fact and Conclusions of Law with his signature on June 30, 2022 (ROA.426-444) which was shown to Judge Gilliland in Waco via "Notice of Supplemental Authority" filed by Appellant on July 15, 2022. (ROA.422-424). There is no mention of a second customer list in Judge Ellison's Findings of Fact and Conclusions of Law.

PLS, in its brief, acknowledges that the customer list referenced by Judge Ellison above is "not the customer list or the customers at issue". (See Footnote Number One of PLS's Brief). Furthermore, PLS company representative James Penn confirmed in the Waco trial that PLS had no evidence that AJ Barricks or Glen Rose used the customer list "AJ Lifetime Numbers 8.14.19".[5] (ROA.5511-

---

[4] In support of no "use" of trade secret, Judge Ellison found, among other things, that AJ Barricks created "AJ Lifetime Numbers 8.14.19" to monitor his sales performance and not as a tool to sell to customers (ROA.431 ¶ 8), that Barricks did not intend on leaving PLS at the time he created "AJ Lifetime Numbers 8.14.19" (ROA 431 ¶ 9), and that Barricks emailed this list to his personal email by accident because it was intended only to transmit personal files only, as evidence by the other 248 attachments on the same email, all of which were personal (ROA.431 ¶ 7).

[5] "AJ Lifetime Numbers 8.14.19" was an Exhibit at the Waco trial, marked as Defendant Exhibit No. 3. (ROA.5511) However, this Exhibit was sealed from public view and is not currently part

5512). The customer list-trade secret which PLS contends was misappropriated has five names accompanied by a tax id number and the city of headquarters. This list was Plaintiff's Exhibit 12 in the Waco trial and was included as part of the Confidential Record Excerpts filed by PLS on March 30, 2026 as document number 56, but was unfiled by the court and has not been refiled. Accordingly, Glen Rose cannot provide a record on appeal citation for the court to reference for this document.

PLS sued Glen Rose alleging a number of causes of action. PLS's causes of action for which appellate issues have been raised are misappropriation of trade secrets under the TEXAS UNIFORM TRADE SECRETS ACT ("TUTSA") and the DEFEND TRADE SECRETS ACT ("DTSA") and unjust enrichment.

The court's charge to the jury characterized Plaintiff's (PLS) customer lists as trade secrets under both the TUTSA and DTSA causes of action where the jury had no discretion to decide otherwise. (ROA.4730, 4732). PLS's proposed jury charge also characterized Plaintiff's customer lists as trade secrets under both the TUTSA and DTSA causes of action with no discretionary room for the jury to decide otherwise. (ROA.3718, 3719). The court's charge instructed, in relevant part, that to succeed on its claim for misappropriation of any given alleged trade

---

of the record on this appeal.

secret, the Plaintiff must prove that the Defendant improperly acquired, used, and/or disclosed the trade secret. (ROA.4730, 4732). There was no requirement that the jury find that the Defendant "used" the trade secret. Instead, the jury charge read in the disjunctive that the jury can find misappropriation through acquiring, using and/or disclosing the trade secret. The court's charge is similar to PLS's proposed jury charge on both TUTSA and DTSA as both did not require "use" as a condition of finding misappropriation of trade secrets. (ROA.3178, 3179).

The jury found against the Plaintiff on all causes of action. (TUTSA claim, ROA.4743)(DTSA claim, ROA.4744)(Entire Jury Verdict, ROA.4740-4750). The District Court entered a judgment on the verdict on November 18, 2024, which included an award for Glen Rose's costs of court and directed Glen Rose to file their motion for costs with the court within fourteen days. (ROA.4751-4752). Glen Rose filed their Request to Enter Bill of Costs and Motion for Costs on November 25, 2024 (ROA.4753-4786). In addition to the Request for Bill of Costs, Glen Rose also filed a Motion for Costs that same day, November 25, 2024. (ROA.4787-4788). The District Court has since failed to rule on this Motion and Glen Rose has not recovered any costs from PLS.

On December 9, 2024, PLS timely filed a Rule 59(e) motion challenging the jury verdict on all causes of action before it (ROA.4797- 4848). Glen Rose filed a

response to PLS's Rule 59(e) motion. (ROA.4849-4859). PLS filed a Reply to Glen Rose's response to PLS's Rule 59(e) motion (ROA.4860-4867). The court, after considering the PLS's Rule 59(e) motion, Glen Rose's response and PLS's reply, denied the Rule 59(e) motion. (ROA.4917-4922). PLS subsequently filed a Notice of Appeal. (ROA.4930-4931). Glen Rose filed their Notice of Appeal for the sole reason that the District Court failed to sign an order awarding court costs of $11,022.25. (ROA 4787). To date there is no order awarding a specific dollar amount for court costs; though the final judgment does state "that Defendant recover its costs from Plaintiff" and that "Defendant is directed to file bills of costs, in accordance with Local Rule CV-54", which is where this dollar amount comes from. (ROA 4751).

## ARGUMENT FOR CROSS-APPELLANT/APPELLEE GLEN ROSE'S BRIEF

### 1. Standard of Review

An award of costs is reviewed for abuse of discretion. *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125 at 128 (5th Cir. 2015), citing *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir.2006), A review of the "prevailing party" determination is done de novo. *Id.,* at 128, citing *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422–23 (5th Cir.2009).

### 2. Argument

Under FRAP Rule 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The rule creates "a strong presumption" in favor of awarding costs to a prevailing party, and "a district court may neither deny nor reduce a prevailing party's request for cost[s] without first articulating some good reason for doing so." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir.2012) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985)).

FED. R. CIV. PROC. 54(D)(1) states the following:

"(d) Costs; Attorney's Fees.

(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be

allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Here, Glen Rose complied with Rule 54(d) FRCP and the court's final judgment, which states "that Defendant recover its costs from Plaintiff" and that "Defendant is directed to file bills of costs, in accordance with Local Rule CV-54" (ROA 4751), by submitting a Request for Bill of Costs (ROA.4753-4786) and a Motion for Bill of Costs on November 25, 2024. (ROA.4787-4788), a mere seven days after the court's judgment awarding costs. The dollar amount of the Bill of Costs was $11,022.25. (ROA.4787). This specific dollar amount was calculated by adding up all of the attachments to the Request for Bills of Costs (ROA.4753-4786).

PLS did not file a response to the Request for Bill of Costs or the Motion for Bill of Costs, nor did they submit any briefing or oral argument at any point arguing that the costs of court submitted by Glen Rose were excessive, unreasonable or not authorized under any particular Local Rule or Federal Rule of any kind. $7,094.60 of the costs of court submitted were for the cost of oral depositions. (ROA 4762-4779). $2,706.05 of the costs of court submitted were for costs of copies of documents for trial. (ROA 4780-4784). $1,221.60 was for hotel

costs at the time of trial in Waco, Texas. (ROA 4785-4786). The hotel, copy costs, and oral deposition costs, specified in exact dollar amounts, equals $11,022.25 which is the exact amount listed in the Request for Costs. (ROA.4787-4788). All of these could be, and should be, considered reasonable costs for this case.

Based on prior Fifth Circuit precedent, the Fifth Circuit does have the authority to correct, amend, or order costs of court that were not ordered properly at the trial level. *U.S. ex rel. Long*, 807 F.3d at 132. In *U.S. ex rel. Long*, the Fifth Circuit modified the award of costs due to certain costs not being authorized by statute, but then affirmed as modified the award of costs in all other respects. *Id.*, at 132.

Here, because the District Court made no ruling whatsoever on Glen Rose's request for costs, Glen Rose prays that the Fifth Circuit award $11,022.25 in costs as these costs were proven at the trial level and not contested by PLS. There is also no dispute that the District Court ordered in its Final Judgment that "Defendant recover its costs from Plaintiff" and that "Defendant is directed to file bills of costs, in accordance with Local Rule CV-54" which it clearly timely complied with. (ROA 4751).

## <u>ARGUMENT AGAINST APPELLANT/CROSS-APPELLEE PLS'S BRIEF</u>

**1. PLS Point No. 1: Whether the District Court committed reversible error by refusing to apply the law of the case doctrine, collateral estoppel, and res judicata, and allowing Glen Rose to introduce evidence and testimony**

**contradicting the legal ruling that the customer list was a trade secret.**

**a. Standard of Review**

"A trial judge's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion". *Wyvill v. United Companies Life Ins. Co*., 212 F.3d 296, 302 (5th Cir. 2000), *citing Mooney v. Aramco Services Co*., 54 F.3d 1207, 1220 (5th Cir. 1995). As stated in *Wyvill*, "We will not reverse a district court's evidentiary rulings unless they are erroneous and substantial prejudice results. The burden of proving substantial prejudice lies with the party asserting error." *Id.,* quoting *FDIC v. Mijalis,* 15 F.3d 1314, 1318–19 (5th Cir.1994).

**b. Argument**

Utilizing theories of res judicata, collateral estoppel and law of the case, PLS complains that the trial judge erred in allowing evidence and testimony contradicting a prior legal ruling that the customer list was a trade secret. According to PLS, the improper evidence and testimony at issue was the following:

Q. Okay. And did A.J. Barricks have access to that?
A. Yes.
Q. Okay. And so he could have looked up all of the all of the customers that were handled by other sales reps for the whole company.
A. Yes, he could.
Q. And you-all have 11 locations.
A. Yes, yes.
Q. And do you have any evidence that he did that?
A. No.

Q. So it was just his accounts; right?
A. The accounts he serviced while being at PLS.
Q. So would you agree with me that if he was being malicious that he could have printed out all of that information and taken it with him because he had access to it?
MR. BANES: Objection, calls for a legal conclusion.3
THE COURT: I'll overrule the objection. You can answer.
(ROA.5453-5454)

In reading the above excerpt, it is unclear how this establishes that the trial judge erred in any way. First, in the excerpt above, PLS's counsel fails to say anything other than "Objection, calls for a legal conclusion". Further, there is nothing in the context of the above excerpt suggesting that the trial judge would have or should have known that Glen Rose was attempting to undermine a prior ruling or finding on trade secrets.

For broader context, Glen Rose cites the questions immediately before and after the ones above. The witness being questioned is PLS Company Representative James Penn. (ROA.5332, 5363). Glen Rose's counsel began the questioning as follows:

Q Okay. I'll ask you -- your counsel got up in opening statement and was talking about asking for punitive damages for willful, malicious behavior. Do you remember that?
A Yes.
Q Okay. So I was going to get into a few more questions about that. So how many -- you said PLS has 5,000 accounts.
A Hopefully 5,001 --
Q Okay.
A -- now that we've been talking.

Q And to get it, you get on Cognos? Is that how you get that?
A No.
Q How do you get that information?
A To get the number of customers?
Q Yeah, if you work at PLS.
A You would go into our proprietary transportation management system.
Q Okay. And did A.J. Barricks have access to that?
A Yes.
Q Okay. And so he could have looked up all of the -- all of the customers that were handled by other
sales reps for the whole company.
A Yes, he could.
Q And you-all have 11 locations.
A Yes, yes.
Q And do you have any evidence that he did that?
A No.
Q So it was just his accounts; right?
A The accounts he serviced while being at PLS.
Q So would you agree with me that if he was being malicious that he could have printed out all of that information and taken it with him because he had access to it?
MR. BANES: Objection, calls for a legal conclusion.
THE COURT: I'll overrule the objection.
You can answer.
BY THE WITNESS (resuming):
A I -- I think there's -- I don't know if there's different levels to maliciousness. He took customers.
Q Right, but he could have caused more economic harm.
A Yes, he could have.
(ROA.5453-5455)

The context for these questions shows that Glen Rose's counsel was not trying to circumvent a ruling on trade secrets but was instead attempting to defend Glen Rose against punitive damages by trying to establish that Barricks wasn't acting with malice. This is certainly an acceptable line of questioning and, other

than an objection regarding legal conclusion, PLS's counsel had no issue with it either. Furthermore, the questions and testimony at issue had no discernible relevance to PLS's appellate point number one. Therefore, PLS's point that the District Court abused its discretion by allowing evidence disputing whether the customer list was a trade secret was not well taken and should be overruled.

If the court is inclined to look at PLS's argument regarding collateral estoppel, law of the case and res judicata, this argument fails as well.

PLS, in raising these legal theories, fails to show what improper evidence was allowed in at trial other than the excerpt referenced above. Accordingly, there is no way to give weight or even consideration to PLS's argument.

There are record cites in the "Statement of Facts" section regarding this argument, but they are the same record cites (ROA.5452-5455) as the argument section with only one additional record cite (ROA.5787-5788) that was not in the argument section. (See "Statement of Facts" section at pg. 22 of PLS's Brief). However, the additional record cite ROA.5787-5788 references testimony regarding "use" of the trade secret and not whether the customer list was a trade secret.

Given the lack of record cites and factual foundation for its claim that the trial judge somehow erred, PLS's briefing likely does not meet the standard of 28(a)(9)(A) FRAP and should be dismissed for inadequate briefing. *See Alameda*

*Films SA de CV v. Authors Rights Restoration Corp., Inc.*, 331 F.3d 472, 483 (5th Cir. 2003)(Explaining that Rule 28(a)(9)(A) FRAP requires "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies". The ultimate purpose of Rule 28(a)(9)(A) FRAP is to "conserve the time and energy of the court and clearly to advise the opposite party of the points he is obliged to meet").

**2. PLS Point No. 2: The District Court erred by allowing evidence and testimony demonstrating that PLS failed to regain its restricted customers, as this was irrelevant to any claim or damage.**

PLS, as in PLS's Point No. 1 above, fails to make record cites or otherwise present a foundation for its argument that could allow this court to possibly find in its favor.

According to the PLS, the improper testimony allowed by the trial judge was the following:

Q. Okay. Now I'm going to switch gears one more time, Mr. Penn, and this is kind of the last area I'm going to talk with you about before we turn you over to the other side to talk. Now, there's been some suggestion that PLS did not try to retain this business from these customers. How do you how do you respond to that?
A. When anyone leaves, our process is -- we don't like seeing people leave, but when anyone leaves, our process is the same. We look at the customer base and then we reassign a new customer owner or account executive for that client and then we do our best to get the customer on the phone as well as send E-mails, reestablish relationship.
(ROA.5420)

Like in appellate point number one, there is nothing about this one excerpt that shows anything improper was happening. Further, PLS fails to mention that it is PLS's counsel that is asking the above question. Now, on appeal, PLS cites this question as a question that should not have been asked or answered. The obvious response to this argument is that PLS's counsel should not have asked the question if it believed it to be improper.

Other than the above excerpt, there are no other record cites in either the "Argument" or "Statement of Facts" sections to any other questions or testimony that PLS believed to be improper. PLS does not point out to the court where it objected to any of the testimony from customers. The Fifth Circuit requires that objections be both timely and sufficiently specific to preserve issues for appeal. *See United States Aviation Underwriters, Inc. v Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990)("objection is required to preserve error when an opponent, or the court itself, violates a motion in limine that was granted); *U.S. v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006)("an objection which is ample and timely to bring the alleged error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to preserve the claim for review."). Rule 103 FRE governs rulings on evidence. To preserve error, a party must do the following:

(1) If the ruling admits evidence, a party, on the record:
  (A) Timely objects or moves to strike; and

(B) States the specific ground, unless it was apparent from the context.

*103 Federal Rules of Evidence*

Here, PLS has not established that it complied with Rule 103 FRE as there is no showing that it objected to the testimony it is saying was improper or inadmissible; PLS does not even point the court to any testimony that was improper or inadmissible. Accordingly, PLS has waived this error.

In addition, given the lack of record cites and factual foundation for its claim that the trial judge somehow erred, PLS's briefing on this point likely does not meet the standard of 28(a)(8) FRAP and should be dismissed for inadequate briefing. *See JTB Tools & Oilfield Services, LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016)(Citing Rule 28(a)(8) FRAP, the Fifth Circuit Court of Appeals held that JTB Tools waived its claims on the merits. In support, the court noted that JTB offered only repeat conclusory assertions failing to offer any supporting argument or citation to authority).

**3. PLS Point No. 3: The District Court committed reversible error by denying PLS's Rule 59(e) Motion when PLS showed a manifest error of law.**

PLS complains that the trial court erred in denying PLS's post-verdict and post-judgment rule 59(e) motion. Specifically, PLS complains that the jury's verdict on the Texas Uniform Trade Secrets Act ("TUTSA") and Defendant Trade Secrets Act ("DTSA") was based on a manifest error of law and fact and the trial

judge erred holding that Plaintiff "had failed to demonstrate that the judgment contains a manifest error of law or fact." (PLS's Brief at pg. 40).

**a. Reviewing Rule 59(e) FRCP Motions on Appeal**

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004), *citing In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir.2002). "This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been ordered or raised before the entry of judgment". *Id., at 478-479, citing Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id., at 479, citing Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989) (internal quotations omitted). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly". *Id., at 479, citing Clancy v. Employers Health Ins. Co.,* 101 F.Supp.2d 463, 465 (E.D.La.2000) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice & Procedure § 2810.1, at 124 (2d ed.1995)).

Glen Rose unpacks PLS's arguments below.

**b. Manifest Error of Law**

For evaluation of this point, Glen Rose provides record cites for the PLS's proposed jury charge (ROA.3171-3199), Glen Rose's proposed jury charge (ROA.3239-3257), Glen Rose's objection to PLS's jury charge (ROA.3259-3277), PLS's objections to Glen Rose's jury charge (ROA.3201-3208), final jury charge (ROA.4721-4739), final signed jury verdict (ROA..4740-4750), signed final judgment (ROA.4751-4752), PLS's Rule 59(e) motion (ROA.4797- 4848), Glen Rose's response to PLS's Rule 59(e) motion (ROA.4849-4859), PLS's Reply to Glen Rose's response to PLS's Rule 59(e) motion (ROA.4860-4867) and the court's ruling on PLS's Rule 59(e) motion. (ROA.4917-4922).

PLS complains that the jury's verdict and the court's judgment were contrary to established law because PLS was required to prove "use" of a trade secret while the law does not require "use". (See PLS's Brief at pg. 42 stating that the jury's verdict and the District Court's upholding of it "added an extra, unnecessary use requirement for TUTSA and DTSA."). Glen Rose interprets PLS's complaint regarding manifest error of law (i.e. "adding an extra, unnecessary, use requirement) as jury charge error. PLS doesn't state that the error of law is jury charge error, but it is the only way to make PLS's argument coherent.

Setting aside whether established Fifth Circuit and Texas jurisprudence requires "use", this point can be resolved by the fact that the final jury charge did not require "use" under the TUTSA or DTSA causes of action.

The relevant section of the final jury charge submitted to the jury on the TUTSA claim stated as follows:

"Plaintiff's customer lists are Plaintiff's trade secrets. To find misappropriation of a trade secret under the Texas Uniform Trade Secrets Act (TUTSA), you must find that Defendant:

1. Acquired the trade secret, and that Defendant knew or had reason to know that the trade secret was acquired by improper means; or" (ROA.4730).

This is very similar to the instruction PLS requested in its proposed jury charge. The relevant section of PLS's proposed jury instruction on TUTSA states the following:

"Misappropriation can occur in two (2) ways:

1. Acquiring the trade secret from someone who improperly acquired the trade secret OR
2. The use of disclosure of the trade secret without the consent of the owner.

TEX. CIV. PRAC. & REM. CODE §134A.002(A)-(B);" (ROA.3178)

As to the DTSA cause of action, the jury charges were even more similar. The relevant portion of PLS's proposed jury instruction read as follows:

"The DTSA and TUTSA misappropriation claims are virtually identical. To succeed on its claim for misappropriation of any given alleged trade secret, Plaintiff must prove all of the following:

4. Defendant improperly acquired, used, and/or disclosed the trade secret."
(ROA.3179).

The court's final jury charge submitted to the jury read, in pertinent part, as follows:

"Plaintiff's customer lists are Plaintiff's trade secrets. To succeed on its claim for misappropriation of any given alleged trade secret under the Defend Trade Secrets Act of 2016 (DTSA), Plaintiff must prove all the following:

4. Defendant improperly acquired, used, and/or disclosed the trade secret." (ROA.4732)

PLS's proposed jury charge and the court's final charge both allow for a finding of misappropriation under TUTSA and DTSA without "use" of a trade secret. Accordingly, PLS cannot now complain of an error of law submitted in the jury charge.

Even if the trial court had submitted a jury charge that PLS disagreed with, PLS waived any such error by not stating objections to the court's jury charge. At

the jury charge conference, which was held shortly before submission of the final charge to the jury, the trial judge asked PLS's counsel if he had any issues with the charge. The soliloquy was as follows:

THE COURT: All right. Please be seated. And we're back on the record for purposes of hearing any formal objections to the Court's proposed jury instructions and verdict form that we provided to the parties. So I'll start with Mr. Banes. Does the plaintiff have any objections or requests with regard to the jury instructions?
MR. BANES: No, Your Honor. We've already made the single request we had. We stand on the objections, you know, for these two causes of action, but other than that, we appreciate the Court's work and we agree with the jury instructions as --
THE COURT: All right. Thank you, Mr. Banes.
MR. BANES: Thank you, Your Honor.
(ROA.5965)(Entirety of Conference, ROA.5965-5968)

PLS counsel's comments above, which were the only ones at the charge conference, failed to state any objection to preserve any alleged error in the jury charge. PLS also did not submit any written objection to the final jury charge. Accordingly, any error in the jury charge is waived. *See Jimenez v. Wood County, Tex.,* 660 F.3d 841, 844-845 (5th Cir. 2011, en banc)(Citing Rule 51 FRAP, the Court emphasized that "a specific, formal, on-the-record objection is required" to preserve any challenge to jury instructions).

For the above reasons, there was no error of law with regard to the court's handling of PLS's causes of action under TUTSA or DTSA. PLS got the jury charge it asked for, did not object to the court's final charge and, therefore, cannot

now be heard to complain about the law that was submitted in the court's final charge to the jury.

### c. Manifest Error of Fact

It is unclear which fact PLS challenges or what factual error PLS is alleging. Glen Rose will attempt to respond to PLS's argument by quoting straight from its brief:

> Therefore, this is not a case of PLS 'simply disagreeing with the jury verdict. Instead, the jury's verdict and the District Court's upholding of it were contrary to established law on TUTSA and DTSA and added an extra, unnecessary use requirement for TUTSA and DTSA. As such, the District Court erred and abused its discretion by denying PLS's Rule 59(e) Motion when the jury's verdict was based on a manifest error of law and fact, namely the extra use requirement.
> (Appellant's Brief at pg. 42)

Based on a plain reading of PLS's argument, PLS appears to again be incorrectly arguing that the court's jury instruction required a finding of "use" of trade secret. However, again, reading the court's jury charge under TUTSA and DTSA, it says "Defendant improperly acquired, used, and/or disclosed the trade secret" (DTSA charge, ROA.3179) and "Acquired the trade secret, and that Defendant knew or had reason to know that the trade secret was acquired by improper means; or" (TUTSA charge, ROA.4730) Accordingly, the jury charge allowed for a finding of misappropriation other than through "use".

To the extent PLS is arguing that the jury verdict of "no" to misappropriation of trade secret under TUTSA or DTSA was against the great weight and preponderance of the evidence, the traditional way to raise this argument in a post-judgment motion is under Rule 59(a) FRCP. In response to PLS's post-judgment Rule 59(e) motion, Glen Rose argued that Rule 59(a) was the proper motion for PLS to file. (ROA.4850). As stated in *Parra* and *Smith*, "Under Rule 59(a), the district court may grant a new trial 'after a jury trial, for any reason for which a new trial has heretofore been granted in an action in federal court' . . this court has noted that they include 'if the district court finds the verdict is against the great weight of the evidence, the damages were excessive, the trial was unfair, or prejudicial error was committed in its course.'" (ROA.4850), *citing Parra v. Interstate Express, Incorporated*, 2022 WL 421411 (5th Cir. 2022), *citing Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A rule 59(a) motion permits the trial court to weigh evidence and order a new trial if the verdict is against the great weight of the evidence, even where substantial evidence supports the verdict. *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir. 1982)*, citing* 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE 2806 at 43 (1973). However, PLS did not file a Rule 59(a) motion; therefore, Glen Rose analyzes PLS's point from the perspective of a Rule 59(e) motion.

Based on the briefing submitted by PLS, Glen Rose cannot ascertain what manifest error of fact PLS complains of other than the flawed and inaccurate argument that the trial court did not allow PLS to prove misappropriation of a trade secret other than through "use". Accordingly, Glen Rose can respond no further on this point.

PLS also argues under appellate point number three that the trial judge and the jury committed a manifest error of law and fact for not awarding it damages under its unjust enrichment cause of action (pg. 42 of PLS's brief). PLS argues that the jury confused and conflated issues of gross lost profits and expectancy damages, that the jury and the trial judge disregarded the benefit to Glen Rose, that PLS's expert established sales benefiting Glen Rose that Glen Rose did not challenge at trial. PLS provides no case law, no legal authority, and no factual recitations to the record to support its argument to this court. Glen Rose also notes that PLS goes directly to damages without also acknowledging and challenging the liability finding. The jury returned a verdict of "no" on liability for unjust enrichment (ROA.4742) and $0.00 for damages for unjust enrichment (ROA.4745). Given the lack of legal authority, record cites, or factual foundation for its claim that the trial judge or jury somehow erred, PLS's briefing on this point likely does not meet the standard of 28(a)(8) FRAP and should be dismissed for

inadequate briefing. *See JTB Tools & Oilfield Services, LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016).

To the extent that PLS is arguing that the facts did not support the verdict of "no" for unjust enrichment and misappropriation of trade secrets, Glen Rose reiterates this should have been raised in a Rule 59(a) motion. Under Rule 59(e), PLS's motion is considered a rehashing of argument and evidence that PLS lost in a previous motion or is new argument that should have been raised, but wasn't, prior to the judgment. Given PLS's lack of appellate briefing on exactly when or how the jury and the court committed a manifest error of law or fact, Glen Rose relies on general case law on Rule 59(e). As stated in *Reitz*, "a Rule 59(e) motion 'is not used to relitigate matters that were not resolved to the movant's satisfaction and is not a back-up plan for curing briefing deficiencies." *Reitz v. City of Abilene*, 2021 WL 5095378 (N.D. Tex., Abilene Division, October 1, 2021), *citing Alford v. Access Industries, Inc.*, No. 1:15-CV-59, 2016 WL 7665860, at *3 (E.D. Tex., April 26, 2016), *citing In re Deepwater Horizon*, 785 F.3d 986, 992 (5th Cir. 2015). The *Reitz* court continued "And while Reitz disagrees with the Court's findings on summary judgment and the relevance of his expert's opinions, neither those findings nor Reitz's disagreement with them constitute a manifest error of law or other basis for relief under Rule 59(e)." *Id.*, at *3. Numerous district courts have been presented with Rule 59(e) motions to rehash previous motions that the

movant lost and they routinely deny these motions. *Garcia v. San Benito Consolidated Independent School District*, 2023 WL 4494396 (S.D. Tex., Brownsville Division, June 12, 2023)(Noting that the movant includes large portions of argument that simply "reiterate, word for word" arguments that merely rehash the same evidence, that the court previously considered and rejected those arguments, and that no new evidence was raised, the district court held that there was no manifest error of law or fact), further citing, "under analogous circumstances", *MIECO LLC v. Pioneer Nat. Res. USA, Inc.*, No. 3:21-CV-1781-B, 2023 WL 3259492, at *3 (N.D. Tex. May 4, 2023) (denying motion for reconsideration because "MIECO's Motion simply rehashes MIECO's summary judgment arguments and presents theories of the case that could have been presented earlier"); *Baker v. Puckett*, No. 4:18-CV-599, 2021 WL 2338869, at *2 (E.D. Tex. Jan. 22, 2021) (holding that "there is no basis for the 'extraordinary remedy' of altering or amending the judgment" where the court had "previously considered [p]laintiff's arguments"); *Louviere v. Carewell Hosp., LLC*, No. CV 18-6419, 2020 WL 491222, at *2 (E.D. La. Jan. 29, 2020) (denying motion for reconsideration where the plaintiff "restat[ed] the exact arguments made on summary judgment, and referenc[ed] the exact exhibits previously submitted); *McCoy v. Kuku*, No. CV 3:17-0275, 2019 WL 4097246, at *1 (S.D. Tex. Aug. 29, 2019) ("Because these contentions rehash arguments that were or

could have been made before entry of judgment, and because they were addressed in the [c]ourt's prior opinion, they are insufficient to warrant relief under Rule 59(e)”).

PLS makes an additional argument under appellate point number three that an ex parte communication occurred between the trial judge and Glen Rose’s customer representative (pg. 43 of PLS’s brief). PLS generally refers to communications and then states the trial judge abused its discretion by not releasing “the letter from Glen Rose”. (pg. 44 of PLS’s Brief). Glen Rose will address this issue in point number four below.

**4. PLS Point No. 4: Trial Judge’s Ex Parte Communication with Glen Rose’s Counsel (pg. 44 of PLS’s Brief)**

PLS alleges under appellate point number three, which is its Rule 59(e) argument, that the trial judge abused its discretion by not tendering a letter submitted to the court by Glen Rose’s corporate representative. (PLS’s Brief at pg. 44). Given that PLS provided no factual or legal foundation how this ex parte communication supported a Rule 59(e) motion to amend the judgment and due to the importance of a trial judge’s reputation, Glen Rose addresses this point separately.

As is typical of all of PLS’s points, PLS provides no record cites to assist this court in finding what PLS references. Here, the trial judge acknowledged all

parts of the ex parte communication including his calling into chambers for a private meeting Glen Rose's corporate representative, Byron Stinson, immediately prior to the hearing on post-trial motions in this case. This is in the record at (ROA.5132-5136). The acknowledgement, as can be seen in the record cite (ROA.5132-5136), is a court order wherein the trial judge states that Mr. Stinson "sent three ex parte communications to Court staff via email" and "a voicemail with the Court" (ROA.5132-5133). The court continued as follows:

> "While the Court does not find that Mr. Stinson's communication bear on the substance of the matter before the Court, the Court agrees that the communications should be made part of the record in this case. Therefore, the plaintiff's request for a copy of Mr. Stinson's communications to the Court is GRANTED. Mr. Stinson's emails and voicemails are attached to this Order." (ROA.5132-5133)

PLS complains that a "letter" was not included in the disclosure. However, the letter was included in the emails and it starts "Dear Judge Derek Gillilland" (ROA.5135). Glen Rose hesitates to provide much more description of what the judge says because the Fifth Circuit Court of Appeals will most likely want to read and listen to this order, with the attached voicemail and emails/letter, for itself and draw its own conclusions. The court does not need Glen Rose to try to interpret for the court what the judge said and wrote. However, Glen Rose is mindful that it is supposed to quote law in support of anything requiring legal analysis. Accordingly, Glen Rose cites case law on the topic of what should and should not

be provided in an ex parte communication. In *W.M.M.*, the Abilene District court cited CODE OF CONDUCT FOR FEDERAL JUDGES, CANON 3(A)(4) for the proposition that a judge who receives an unauthorized ex parte communication bearing on the substance of a matter should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." *See W.M.M. v. Trump*, 2025 WL 1176980 (N.D. Tex., Abilene Division, April 21, 2025). This is the same case cited by the trial judge in its order. Here, the trial judge did disclose everything; the only thing it held back was a full description of what was said in the private chamber meeting prior to the hearing, however, the trial judge did describe the conversation by stating in the order "The conversation held with Mr. Stinson before the hearing was not related to the issues before the Court but rather addressed his communication to and treatment of court staff. No party gained a procedural, substantive or tactical advantage because of the ex parte communication." (ROA.5132-5133).

Glen Rose does not know what relief PLS requests with regard to this issue; accordingly, Glen Rose declines to address this issue further.

## CONCLUSION

Appellee/Cross-Appellant Glen Rose Transportation, Inc. prays that the court award them $11,022.25 in costs of court proven in their Requests for Costs and Motion for Costs based on the trial court's award of costs of court plus an additional

$605.00 in filing fees for having to file this appeal.

Appellee/Cross-Appellant Glen Rose Transportation, Inc. further prays that the court overrule the appellate points raised in Appellant/Cross-Appellee Pittsburg Logistics Systems, Inc.'s brief and affirm the trial court's judgment. Appellee/Cross-Appellant Glen Rose Transportation, Inc. prays for any other such further relief as the court may find them entitled to in equity or at law.

Respectfully submitted,

By: *<u>/s/ Wes Dauphinot</u>*
Wes Dauphinot
Texas State Bar No. 00793584
Law Office of Wes Dauphinot, PC
900 West Abram Street
Arlington, TX 76013
Phone: 817-462-0676
Fax: 817-704-4788
Email: wes@dauphinotlawfirm.com

*Counsel for Defendant- Appellee/Cross-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Appellee/Cross-Appellant's Response to Appellant's Brief with the court clerk for the Fifth Circuit Court of Appeals on April 10, 2026, using the electronic case filing system, PACER, for the court. The PACER system sent a "Notice of Docket Activity" pursuant to Fifth Circuit Rule 25.2.5 to the following attorneys of record, who consented in writing to accept service by electronic means in accordance with Federal Rule of Appellate Procedure 25:

Bryant Banes
Texas State Bar No. 24035950
Federal ID No 31149
Sarah P. Harris
Texas State Bar No. 24113667
Federal ID No 3421904
1800 West Loop South
Suite 1750
Houston, Texas 77027
Email: bbanes@nhblaw.com
sharris@nhblaw.com

*/s/ Wes Dauphinot*
Wes Dauphinot
*Counsel for Defendant-Appellee/Cross-Appellant*

# **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Length Limits, Typeface, Text, Margin, and Typeface Style Requirements

1. This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 37(a)(7)(B) because, excluding parts of the document that are exempted under FRAP 32(f) and 5th Circuit Rule 32.2, this brief was prepared using a computer and contains 8,617 words in total.

2. This brief complies with the Typeface requirements in accordance with FRAP 32(a)(5) and type-style requirements of FRAP 36(a)(6) because this document was prepared using Microsoft Word for Microsoft 365 MSO in Times New Roman 14-point font with Times New Roman 12-point font for footnotes and all case names are italicized.

3. This brief complies with the Text Requirements in accordance with FRAP 32(a)(4) in that the body of this brief is double spaced except for quotations over two lines and footnotes, which are single-spaced.

4. This brief complies with the Margins Requirements in accordance with FRAP 32(a)(4) in that the margins are one inch on all sides.

*/s/ Wes Dauphinot*
Wes Dauphinot
*Counsel for Defendant-Appellee/Cross-Appellant*
4/10/2026

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

The undersigned certifies, in accordance with the Firth Circuit's ECF Filing Standard Rule A(6), that the foregoing document 1) has any necessary and applicable redactions in accordance with Fifth Circuit Rule 25.2.13; 2) is submitted by electronic means via the Court's electronic case filing system and is an exact copy of the paper document in accordance with Fifth Circuit Rule 25.2.1; and 3) was scanned for viruses with a recent commercial virus scanning program and was deemed free of viruses.

*/s/ Wes Dauphinot*
Wes Dauphinot
*Counsel for Defendant-Appellee/Cross-Appellant*
4/10/2026